IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


JONATHAN ROBERT JENNINGS WALKER                                    PLAINTIFF

v.                                    Civil No. 6:20-cv-06114

SHERIFF JASON WATSON, ET AL                                    DEFENDANTS


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed by Plaintiff pursuant to 42 U.S.C. § 1983.  Plaintiff,

Jonathan Robert Jennings Walker, proceeds in this matter *pro se* and *in forma pauperis*.  (ECF

Nos. 1, 2, 3).  Before the Court are two motions for summary judgment:  the Renewed Motion for

Summary Judgment by County Defendants (ECF No. 160); and the Second Motion for Summary

Judgment on Behalf of Separate Defendants, Brenda Piggee, Halbert Torraca, James Gainous, and

Tiger Correctional Services, Inc.  (ECF No. 164).  The Court has considered the motions, and the

responses and replies thereto.  (ECF Nos. 181, 189, 192).  The issues presented are ripe for

decision.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011), the Honorable Susan

O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose

of making a Report and Recommendation.

### I.  FACTUAL BACKGROUND

Plaintiff filed his *pro se* Complaint on October 1, 2020.  (ECF No. 1).  That same day, the

Court granted Plaintiff's application to proceed *in forma pauperis*.  (ECF No. 3).  The claims

currently before the Court are set out in Plaintiff's Second Amended Complaint, which was filed

1

on August 16, 2021.  (ECF No. 140).[1]  At the time Plaintiff filed his Second Amended Complaint,

he was an inmate in the Clark County Detention Center awaiting trial on pending criminal charges.

(ECF No. 140 at 2-3).  According to a pleading entitled Notice of Transfer From Facility filed by

Defendants Jason Watson, Raymond Funderburk, Michael Lesher, and Clay Atkins, Plaintiff was

transferred from the Clark County Detention Center on April 14, 2022.  (ECF No. 203).  In

addition, Plaintiff filed a Notice of Change of Address on May 4, 2022, indicating that he is now

an inmate in the Arkansas Department of Corrections.  (ECF No. 207).

Plaintiff's first claim as set forth in the Second Amended Complaint, is stated under the

Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, against

Defendants Sheriff Jason Watson, Chief Deputy Raymond Funderburk, Jail Administrator Michael

Lesher, Jail Sergeant Clay Atkins, and Jail Administrator Fred Phillips (identified collectively as

the "Clark County Defendants"); and Halbert Torraca, James Gainous, Brenda Piggee, and Tiger

Correctional Services, Inc. (identified collectively as the "Tiger Defendants").[2]  (ECF No. 140 at

6).  This claim is stated against the Defendants in their official capacity only.  Plaintiff states that

Defendants "have tried to hinder Plaintiff from practicing his sincerely held religious beliefs" in

Jewish dietary laws by "not providing proper Kosher diet, making Plaintiff choose between food

and his religion, force Plaintiff to partake in Christmas and Christian worship services."  *Id*.  With

---

[1] In his summary judgment pleadings, Plaintiff appears to include various facts which relate to claims
Plaintiff included in previous versions of his complaint in this case, but not in the Second Amended
Complaint.  As set forth in previously by the Court:  "An amended complaint supersedes, or takes the
place of, the original complaint.  After amendment, the Court will treat the original complaint as
nonexistent.  Any cause of action that was raised in the original complaint is waived if it is not raised" in
the amended complaint.  (ECF No. 6).  Accordingly, only the claims Plaintiff specifically pled in his
Second Amended Complaint will be considered.
[2] A Magistrate Judge's Report and Recommendation was filed in this case on February 14, 2022,
concerning Defendant Joyce Lamilla.  (ECF No. 184).  Defendant Lamilla has not been located for
service in this matter.  For that reason, and because the Court finds that Plaintiff has failed to state a
plausible claim against Defendant Lamilla, the Report and Recommendation recommends that Plaintiff's
Second Amended Complaint be dismissed without prejudice against Lamilla.  *Id*.

respect to his official capacity claims, when asked to describe the custom or policy that caused the constitutional violation, Plaintiff states: "Arkansas Jail Standards Policy (AJSP) § 12-1001 et seq.; 42 U.S.C. § 2000cc; Clark County Detention Center Policy (CCDCP) 017 (IV)(A); AJSP § 6-1001 et seq." (ECF No. 140 at 7).

Plaintiff's second claim is for "equal protection" and is stated against each Defendant in both their official and personal capacities. (ECF No. 140 at 7). Plaintiff states "Defendants have made Plaintiff's Jewish religion 2nd class discriminating against him by failing to accommodate Plaintiff's religious needs while accommodating the religious needs of similarly situated persons who follow other religious beliefs." With respect to his official capacity claims, when asked to describe the custom or policy that caused the constitutional violation, Plaintiff states: "AJSP § 8-1001 to 1002; AJSP § 12-1001 et seq.; AJSP § 10-1001 et seq.; 14 Amendment to the United States Constitution (U.S Constitution); Article 2 § 3 to the Arkansas Constitution (AR Constitution)" (ECF No. 140 at 8).

Plaintiff states his third claim is for "free exercise." The claim is stated against all Defendants in both their official and personal capacities. (ECF No. 140 at 8). Plaintiff alleges "Defendants have tried to hinder Plaintiff from practicing his sincerely held religious beliefs in Kashruth, not providing proper Kosher diet, making Plaintiff choose between food and religion, passing off unkosher foods as Kosher to the Plaintiff, forced Plaintiff to partake in Christmas and Christian worship services." *Id.* With respect to his official capacity claims, when asked to describe the custom or policy that caused the constitutional violation, Plaintiff states: "CCDFP 017(IV)(A); AJSP § 8-1001 & 1002; AJSP § 10-1008 to 1011; AJSP § 12-1001 et seq.; 1st Amendment to the U.S. Constitution; Article 2 § 24 to the AR Constitution; AJSP § 6-1001 et seq." (ECF No. 140 at 9).

Plaintiff's fourth claim is for "establishment of religion" and is stated against the Defendants[3] in both their official and personal capacities.  (ECF No. 140 at 9).  Plaintiff asserts that "Defendants tried to hinder Plaintiff and try to get Plaintiff to stop practicing his sincerely held Jewish religious beliefs, force Plaintiff to partake in Christmas, force Plaintiff to listen to Christmas worship services, accommodated the religious beliefs of other similarly situated persons, given extra foods from the kitchen to non-Jewish inmates."  *Id*.   With respect to his official capacity claims, when asked to describe the custom or policy that caused the constitutional violation, Plaintiff states:  "CCDFP 017; AJSP § 12-1001 et seq.; 1st Amendment to the U.S. Constitution; AJSP § 6-1001 et seq.; Article 2 § 24 to the AR Constitution."  (ECF No. 140 at 10).

Plaintiff's fifth claim is for "retaliation" and is stated against Defendants Watson, Funderburk, Lesher, Atkins, Phillips, and Piggee.  (ECF No. 140 at 10).   Plaintiff states "Defendants retaliated against Plaintiff by trying to hinder him from practicing his protected rights in his religious beliefs by withholding foods, feeding minute portions, taking Plaintiff's wedding band while similarly situated persons were allowed to keep theirs, refusing to order proper Kosher foods, allow Plaintiff to be assaulted then refused medical care to allow Plaintiff to file hate crime charges, put on suicide watch, and blocking Plaintiff's access to courts."  *Id*.  With respect to his official capacity claims, when asked to describe the custom or policy that caused the constitutional violation, Plaintiff states:  "1st Amendment to the U.S. Constitution; Article 2 § 13 to the AR Constitution."  (ECF No. 140 at 11).

Plaintiff states his sixth claim as "due process."  Plaintiff asserts the claim against each Defendant in both their official and personal capacities.  (ECF No. 140 at 11).  Plaintiff states:  "Defendants denied Plaintiff's liberties without due process when they failed to properly feed

---

[3] Defendant Atkins is not named to this claim.

Plaintiff in accordance with his religion while doing so for similarly situated persons; Lesher did so when Plaintiff was assaulted by a prison inmate due to his religion and sexuality and then refused medical treatment for the Plaintiff or allow him to file hate crime charges;  Watson, Funderburk, Atkins, and Phillips did so when Plaintiff was put on suicide watch on January 31, 2021 for not eating unkosher breakfast." (ECF No. 140 at 11).  With respect to his official capacity claims, when asked to describe the custom or policy that caused the constitutional violation, Plaintiff states:  "CCDCP 11; CCDCP 18; AJSP § 8-1001 et seq.; AJSP § 10-1001 et seq.; AJSP § 12-1001 et seq.; 14th Amendment to the U.S. Constitution; Article 2 § 8 to the AR Constitution." (ECF No. 140 at 12).

Plaintiff's seventh claim is for "false representation of Kosher food."  (ECF No. 140 at 12). Plaintiff states his claim against the Defendants[4] in their official and personal capacities.  Plaintiff states: "Defendants have served foods to the Plaintiff claiming these foods are Kosher, claiming such foods do not need to hold a Kosher symbol, knowing such foods are not certified as nor prepared in a Kosher way, that the kitchen is not Kosher . . . nor has Rabbinical oversite, writing 'Kosher' or a 'K' upon the kitchen foods served."  *Id*.  With respect to his official capacity claims, when asked to describe the custom or policy that caused the constitutional violation, Plaintiff states:  "CCDCP 11; AJSP § 6-1002(d); Arkansas Code 20-57-401."  (ECF No. 140 at 13).

Plaintiff seeks compensatory and punitive damages as relief for his stated claims.  (ECF No. 140 at 13).  Specifically, Plaintiff seeks:  "(i) $500 per incident of discrimination per defendant; (ii) $500 per incident per defendant of adverse violations of free exercise; (iii) $500 per incident per defendant for retaliation; (iv) $500 per incident per defendant's violations of due process; (v) $500 per incident per defendant of establishment violations; (vi) $500 per meal per

---

[4] Defendant Atkins is not named to this claim.

defendant of false Kosher; (vii) $450,000 for the assault & denial of medical care; (viii) $3.75 per meal not prepackaged Kosher meal as stated in contract; (ix) Plaintiff's costs and fees."  Plaintiff also seeks "injunctive, declaratory judgments."  (ECF No. 140 at 13).

As stated above, both the Clark County Defendants and the Tiger Defendants have filed motions for summary judgment.  (ECF Nos. 160, 164).  Plaintiff has responded to the Defendants' motions.  (ECF Nos. 181, 182, 183).  The Court notes that Plaintiff's filings total 998 pages.  While many of Plaintiff's exhibits are irrelevant to the claims set forth in his Second Amended Complaint and/or the issues presented the Defendants, the Court painstakingly has reviewed these documents in their entirety.

The following is a summation of the facts established for purposes of this summary judgment proceeding:

Plaintiff first became an inmate at the Clark County Detention Center ("CCDC") on August 6, 2020.  (ECF No. 160-1 at 5).

Defendant Michael Lesher was the Jail Administrator of the CCDC when Plaintiff was booked into the CCDC.  (ECF No. 160-4).

Plaintiff contends that he requested a kosher diet upon intake on August 6, 2020.  (ECF No. 167-1 at 6; 182 at 1).  In his deposition, Plaintiff states:  "I was like I'm Jewish.  I don't eat pork, I need kosher."  (ECF No. 167-1 at 6).

CCDC documents evidence a request for kosher meals by Plaintiff on August 9, 2020. (ECF No. 160-2).  Specifically, Plaintiff's documented request states "kosher foods I am Jewish and cannot eat pork products or eat off of anything pork has ever touched for it is a violation of my religion to do so.  Thank you."  *Id*.  Lesher responded to Plaintiff's request stating "There is no pork served in this facility."  *Id*.

According to Defendant Fred Phillips, the Jail Administrator of the CCDC as of January 1, 2021, Plaintiff "is the first inmate under the present Clark County administration to request a kosher diet." (ECF No. 160-6).

CCDC had a contractual agreement with Defendant Tiger Correctional Services ("Tiger") to provide food services for the inmates at the CCDC. (ECF No. 160-3).

Plaintiff was provided sack lunches beginning on August 9, 2020. (ECF No. 160-1 at 6; 167-1 at 7). However, Plaintiff testified "that's what they feed on the weekends and that's what they feed everybody for dinner." *Id.* Plaintiff states he had a religious objection to those meals because "the tray is cross-contaminated, just like everything else in the kitchen, because pork has been served. It mixes dairy with meat and the foods that they were serving, like all the bologna and everything that they put in everything is not kosher and possibly contains pork products, which I cannot eat." *Id.* at 7.

Plaintiff states during those ten (10) days he was just eating "the bag of chips that came in the lunch." (ECF No. 160-1 at 7; 167-1 at 7).

Tiger was not informed that Plaintiff had requested kosher meals at the CCDC until August 16, 2020. (ECF No. 166-2; 166-3; 166-4). According to Defendant Karen Hinson, Food Services Director at Tiger, and Cynthia Womble, Executive Assistant/Chargeback Specialist at Tiger, after Tiger was notified of Plaintiff's kosher request, Tiger "immediately began serving Plaintiff a Common Fare diet, which has been approved as kosher by a Registered Dietician." (ECF No. 166-2; 166-3).

Plaintiff began receiving Common Fare Meals on August 16, 2020. (ECF No. 160-1 at 7; 167-1 at 7). With respect to the Common Fare diet, Plaintiff complains "the only thing they did

was give me peanut butter, instead of the meat portion of whatever they were feeding."  (ECF No. 167-1 at 7).

According to the discovery responses of the Tiger Defendants, "[d]uring Plaintiff's incarceration at the Clark County Jail, separate cookware and utensils were used solely for the preparation of common fare foods.  The common fare cookware and utensils were cleaned by Brenda Piggee (Tiger Correctional Services' only employee at the Clark County Jail) in a portion of a triple sink that was used solely for this purpose (and thus was not used to clean other cookware and utensils).  The common fare foods were served to Plaintiff in styrofoam trays, and Plaintiff was provided with disposable utensils."  (ECF No. 167-10 at 2).

Plaintiff began receiving prepackaged HMR meals in mid-October of 2020.  (ECF No. 167-1 at 7).  Tiger contends that the change to prepackaged HMR meals occurred "after consulting with Dr. Jennifer Jackson, who is a Registered Dietician."  (ECF No. 166-2; 166-3).  However, Plaintiff again complains that those prepackaged meals were not kosher, but were for "weight management."  *Id*.  Plaintiff further states the HMR meals "mix dairy with meat, they don't follow the Jewish dietary laws."  *Id*. at 8.

According to Plaintiff's deposition testimony, he began receiving kosher prepackaged meals in November.  (ECF No. 167-1 a 9).  The kosher prepackaged meals are double-packaged and do not offend kosher laws.  *Id*.  According to Lesher, Plaintiff was provided prepackaged kosher meals beginning November 21, 2020.  (ECF No. 160-4 at 2).

Plaintiff complains that from November 21, 2020, to May 9, 2021, the kosher prepackaged meals were supplemented with non-kosher compliant items:  "the vegetable portions of what she's serving on the mainline, and that in, itself, has been offensive because it's mixed – she puts butter in everything, so she's mixing – she's giving me dairy and meat in the same meals.  Even though

one is a prepackaged meal with meat and dairy is over here, she's still expecting us to eat both of them in the same meal for the calorie intake." (ECF No. 167-1 at 9; 182 ).

Plaintiff contends that he was served milk that was not "not marked kosher." (ECF No. 167-1 at 9). With respect to the milk, Plaintiff states: "I don't know if its being processed on kosher aspects of the factory." *Id*.

The record contains evidence of multiple grievances filed with the CCDC by Plaintiff concerning his meals. Examples of his complaints include: October 19, 2020, HMR prepackaged meals and the milk served are not marked kosher (ECF No. 183-15);  November 1, 2020 complaints concerning the mixing of meat with dairy (ECF No. 183-16); November 23, 2020, the lack of variety of the kosher prepackaged meals and the lack of kosher breakfasts (ECF No. 183-17); December 10, 2020, the handling of the kosher prepackaged meals (ECF No. 183-17 at 23); January 7, 2021, serving dairy with meat (ECF No. 183-18 at 2); January 8, 2021, mixing of dairy with meat (ECF No. 183-18 at 3); January 9, 2021, the mixing of dairy and meat (ECF No. 183-17 at 25); February 8, 2021, the improper handling of his prepackaged kosher meals (ECF No. 183-17 at 44); April 20, 2021, mixing dairy with meat (ECF No. 183-18 at 5); and, April 21, 2021, mixing dairy with meat (ECF No. 183-18 at 9).

Plaintiff asserts that on specific occasions, he was fed lesser amounts of the prepackaged meals – for example, on occasions being served one prepackaged meal, when he should have been served two. (ECF No. 183-1 at 5).

Plaintiff states that the meals served beginning May 10, 2021, were actually kosher. (ECF No. 182 at 2).

Defendant Brenda Piggee, who is employed by Tiger as the Kitchen Manager at the CCDC, does not create Tiger's menu to be served to Plaintiff or other inmates at the CCDC.  (ECF No. 166-4; 166-2; 166-3).  Piggee uses the CCDC facility provided to her to prepare food.  *Id*.

According to Tiger, in 2020, it offered approximately eighty-five (85) kosher items through its commissary to inmates at the CCDC.  (ECF No. 166-2; 166-3; 166-5).

Plaintiff contends that he asked Lesher several times if he could have kosher foods delivered or dropped off to him and was told no.  (ECF No. 167-1 at 10).

Defendant Fred Phillips became the Jail Administrator of the Clark County Sheriff's Office on January 1, 2021.  (ECF No. 160-6 at 1).  According to Phillips, Clark County consulted with Brian Trubitt "to observe and review the Clark County Jail to ensure it was properly providing kosher-compliant items" to Plaintiff.  (ECF No. 160-6 at 2).  According to the Affidavit of Brian Trubitt, holds himself out as "an expert in Judaism and Judaic studies."  (ECF No. 160-7).

Upon some occasions that kosher-compliant meals could not be obtained from Tiger, Clark County supplemented Plaintiff's meals with items Sergeant Fred Phillips or his staff purchased from the local grocery store.  (ECF No. 160-6; 167-1 at 17; 182 at 3).

Plaintiff received access to his own microwave by mid-January 2021.  The microwave was provided to prevent cross-contamination of Plaintiff's food.  (ECF No. 167-1 at 11-12; 160-6).  Plaintiff contends that he has "caught other inmates-trustees and work crew – along with CCDC staff using such microwave."  (ECF No. 182 at 3).

According to the Affidavit of Lesher, during the Christmas season, sometimes local churches donate and provide holiday meals for the inmates.  Volunteers are also allowed to pass out cards or candy while serving the food.  (ECF No. 160-4).  No inmate is denied participation in receiving these meals.  *Id*.  According to Lesher, there is no jail-sanctioned "Christmas" meal.

(ECF No. 160-4).  Churches sometimes host a prayer or brief church service in the CCDC day room while there to serve a holiday meal.  (ECF No.160-4).  No inmate is forced to participate; instead, they are free to leave and return to their cells or to watch TV instead.  *Id*.  No denomination is prevented from donating meals and volunteering.  (ECF No. 160-4).

According to Lesher,  even during the holidays, the jail serves the Tiger menu, with the exception of any donated holiday meals.  (ECF No. 160-4).

Plaintiff contends that on December 25, 2020, he received breakfast only from the Tiger menu.  (ECF No. 183 at 25).  Plaintiff contends that at lunch he was only offered the non-kosher Christmas meal.  (ECF No. 183 at 25; 183-1 at 6; 183-17 at 10; 183-23).

Plaintiff states that he was forced to hear Christian worship services.  (ECF No. 183-23).  Plaintiff also contends that the CCDC posted memos referencing Christmas – such as the Christmas Ordering Scheduling which established a modified commissary ordering scheduling due to the Christmas holiday.  (ECF No. 183-23 at 2).

Plaintiff states that he had his wedding ring confiscated on September 28, 2020, by Defendants Lesher and Atkins.  (ECF No. 183-1 at 4).  Plaintiff asserts that other inmates have been allowed to wear heir wedding bands and that one inmate was allowed to wear a necklace.  *Id*.

According to Lesher, it is CCDC jail policy to prohibit any jewelry.  (ECF No. 160-4 at 2).  According to Lesher, Plaintiff's wedding band should have been confiscated during intake, but was overlooked.  *Id*.  Lesher further states:  "[w]hen made aware that [Plaintiff] still had jewelry in his possession, it was confiscated, per jail policy."  *Id*.

Lesher states:  "[t]o my knowledge, the only instance in which an inmate is permitted to keep a wedding band on is when, despite best efforts, the ring is unable to be removed from the inmates hand and would otherwise have to be cut off."  (ECF No. 160-4 at 2).

According to Lesher, under Arkansas Criminal Detention Facility Standards, certain classes of inmates are to be separated by sight and sound "to the greatest extent possible." (ECF No. 160-4 at 2-3). Lesher states: "[w]hile not always possible to completely separate all inmates in the Clark County Jail due to the size of the facility, while I was Jail Administrator, we consistently passed our jail standards inspections." *Id.*

Plaintiff alleges that in November of 2020, he was assaulted by an Arkansas Department of Corrections inmate that was temporarily housed in the CCDC. (ECF No. 160-4 at 3; 183-1). According to Lesher, Plaintiff did not immediately report the assault. *Id.* Plaintiff disputes the timing of his report of the alleged assault. Plaintiff states that he reported the issue to Lesher the following day. (ECF No. 182 at 6).

According to Lesher, at the time Plaintiff reported the incident, he had no apparent injuries or any physical markings. (ECF No. 160-4 at 3). Plaintiff contends that had internal injuries resulting from the assault. (ECF No. 182 at 6).

Plaintiff requested medical attention at the time he reported the alleged assault. According to Lesher, Plaintiff was informed that he would need to use the jail's medical request system, which he complied with. (ECF No. 160-4 at 3). According to Lesher, Plaintiff was seen by Dr. Elkins on several occasions after he requested medical care. *Id.*

According to Lesher, after speaking with the Criminal Investigation Department, there was not enough evidence that would justify bringing criminal charges against the inmate who allegedly assaulted Plaintiff. This decision was due to the lack of injuries, witnesses, or other proof of an assault. (ECF No. 160-4 at 3-4).

In January of 2021, Plaintiff was placed on suicide watch after refusing to eat several meals in a row. (ECF No. 160-6 at 2). Phillips states Plaintiff was moved from his cell to one that created

a safer environment for the inmate and so that Plaintiff could be more easily observed by jail staff. *Id*. Phillips states Plaintiff was on suicide watch for roughly 4-5 hours to ensure he was not a danger to himself. *Id*. When it was deemed Plaintiff was not a danger to himself, he was taken off suicide watch. *Id*. Plaintiff states he was not moved from the cell he was moved to for suicide watch for seven (7) days. (ECF No. 182 at 9; 183-3 at 8).

## II.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution.  *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).   The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both.  With the exception of Plaintiff's claim under the RLUIPA, Plaintiff states each of his claims against the relevant Defendants in both their official and personal capacities.  "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of right.  To establish personal liability of a supervisory defendants, [plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights."  *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007)(internal quotations and citation omitted).  General responsibility for supervising a detention center is insufficient to establish personal involvement.  *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011).

In *Gorman v. Bartch,* 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit Court of Appeals discussed the distinction between individual and official capacity suits.  As explained by the Court in *Gorman*:

"Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the

14

type of defense that is available.  *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).  Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself.  *Id.* 502 U.S. at 24-27, 112 S.Ct. at 361-62 (1991).  Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense.  *Id.* 502 U.S. at 25-27, 112 S.Ct. at 362."

*Gorman,* 152 F.3d at 914.

## A.  RLUIPA

As set forth above, Plaintiff's first claim is for a violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc.  The claim is set forth against each Defendant in their official capacity only.  (ECF No. 140 at 6).

The RLUIPA does not permit actions against governmental employees in their individual capacities.  *Best v. Cox,* 2020 WL 6572656, *4 (E.D. Ark. Oct. 21, 2020).  Further, only injunctive relief is available under the RLUIPA on official capacity claims.  *Id.* at 18-19; *see also Van Wyhe v. Reisch,* 581 F.3d 639, 655 (8th Cir. 2009).  Because Plaintiff has now been transferred to a state facility (ECF No. 203, 207), his injunctive relief claim under the RLUIPA is moot.  *Scott v. Lewis*, 827 Fed. Appx. 613 (8th Cir. 2020); *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012).  *See also Randolph v. Rodgers,* 253 F.3d 342, 345 (8th Cir. 2001)(inmates transfer to a different facility moots claims for injunctive relief).  The Defendants are entitled to summary judgment on this claim.

## B.  Kosher Diet  and Religious Accommodations

In his second, third and fourth claims, Plaintiff argues that his constitutional rights were violated in various ways surrounding his ability to practice his Jewish faith, including the accommodation of his kosher dietary needs.  The Court will analyze Plaintiff's claims under the

First Amendment Free Exercise Clause (ECF No. 140 at 8), the Equal Protection Clause (ECF No. 140 at 7), and the Establishment Clause (ECF No. 140 at 9).

### 1. Free Exercise

In his third claim, Plaintiff argues the Defendants "tried to hinder Plaintiff from practicing his sincerely held religious beliefs" by not providing a proper kosher diet, making Plaintiff choose between his religious beliefs and food, passing off unkosher foods as kosher, and forcing Plaintiff to "partake in Christmas and Christian worship services."  (ECF No. 140 at 8).

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise or religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  However, the right is not without limitation.  *Id.*  Inmates must be afforded "reasonable opportunities . . . to exercise the religious freedom guaranteed" by the First Amendment.  *Cruz v. Beto,* 405 U.S. 319, 322 n.2 (1972).  To make out a Free Exercise violation the Plaintiff must first establish that the complained of action "substantially burdens" his ability to practice his religion.  *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008).  A substantial burden means that the challenged actions "must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion." *Id.*

Although the Defendants' summary judgment papers include arguments concerning the sincerity of Plaintiff's individual religious beliefs and whether any restriction was of a "central tenet" of his beliefs, the Court will, instead, focus on whether the issues presented "substantially burdened" Plaintiff's ability to practice his religion.  The Eighth Circuit has recently recognized

that "there is extensive (but not total) agreement that an isolated, intermittent, or otherwise *de minimis* denial or interruption of an inmate's religiously required diet does not substantially burden his religious belief." *Mbonyunkiza v. Beasley*, 956 F.3d 1048, 1054 (8th Cir. 2020), *citing Colvin v. Caruso,* 605 F.3d 282, 293-94 (6th Cir. 2010); *Abdulhaseeb v. Calbone,* 600 F.3d 1301, 1321 (10th Cir. 2010); *Gallagher v. Shelton,* 587 F.3d 1063, 1070 (10th Cir. 2009); *Rapier v. Harris,* 172 F.3d 999, 1006-07 n.4 (7th Cir. 1999); *Watkins v. Donnelly,* 551 F. App'x 953, 960-61 (10th Cir. 2014) (unpublished); *Tapp v. Proto,* 404 F. App'x 563, 566 (3d Cir. 2010) (unpublished); *Norwood v. Strada,* 249 F. App'x 269, 272 (3d Cir. 2007) (unpublished). *But see Thompson v. Holm,* 809 F.3d 376, 380 (7th Cir. 2016); *Ford v. McGinnis,* 352 F.3d 582, 591-94 (2d Cir. 2003). In addition, in the same case, the Eighth Circuit noted that the Free Exercise Clause "is directed at legislative action," further noting "all the Eighth Circuit Free Exercise decisions our research has uncovered, have involved claims alleged that a statute, or a regulation or policy implementing a statute, unconstitutionally prohibited a sincerely held religious belief or otherwise unduly burdened the free exercise of religion." *Mbonyunkiza*, 956 F.3d at 1054. The Court further concluded "absent evidence that an underlying prison regulation or policy violates the Free Exercise Clause, evidence that a correction official negligently failed to comply with an inmate's sincerely held religious dietary beliefs does not establish a Free Exercise Clause under § 1983." *Id*. at 1055.[5]

The proof shows that Plaintiff was the first inmate "under the present Clark County administration to request a kosher diet." (ECF No. 160-6). Within ten (10) days of Plaintiff's intake, he began being served the Common Fare diet, "which had been approved as kosher by a

---

[5] The *Mbonyunkiza* Court recognized that "evidence of pervasive 'mistakes' might support a claim that . . . [there was] a *de facto* policy of ignoring or deviating from its free-exercise-compliant policies." 956 F.3d at 1055.

Registered Dietician." (ECF No. 166-2). Following complaints by Plaintiff concerning the diet, specifically regarding cross-contamination and the mixing of dairy and meat items during the same meal, and after the consultation with a dietician, Plaintiff was placed on pre-packaged HMR meals. *Id*. There is proof Plaintiff began receiving prepackaged kosher meals on or about November 21, 2020. (ECF No. 160-4). Although Plaintiff complains that, even after this time, his meals were supplemented with non-kosher items or items that he believed had been cross-contaminated during preparation, other than Plaintiff's self-serving affidavit, there is no proof to support his contention that any deviations occurred as a rule, or on an on-going basis. At most, the proof points to "intermittent, or otherwise *de minimis* denial or interruption of [Plaintiff's] religiously required diet" rather than a substantial burden to his religious belief. *Mbonyunkiza*, 956 F.3d at 1054.

In addition, while maybe not most efficiently, the proof shows continued attempts to accommodate Plaintiff's religious requests. The proof does not support the presence of a regulation or even custom or policy unconstitutionally prohibiting "a sincerely held religious belief or otherwise unduly burden[ing] the free exercise of religion." *Id*. Rather, the summary judgment evidence presented shows the Defendants attempted to comply with Plaintiff's requests for a kosher diet.

The Defendants are entitled to summary judgment on Plaintiff's individual and official capacity claims based on the First Amendment Free Exercise Clause.

### 2. Equal Protection

Plaintiff argues that his Equal Protection rights were violated by the Defendants due to their alleged failure to accommodate his religious needs while accommodating the religious needs of similarly situated persons who follow other religious beliefs. (ECF No. 140 at 7).

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend XIV, § 1. The purpose of the Equal Protection Clause "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 611 (2008) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (percuriam)).

Only *deliberate* discrimination is actionable under the Equal Protection Clause. *Personnel Adm'r. v. Feeney*, 442 U.S. 256, 273 (1979); *Washington v. Davis*, 426 U.S. 229, 239-48 (1976). "Discriminatory purpose can be proved with various kinds of direct and circumstantial evidence, but it is most often proved with evidence that similarly situated inmates were treated differently." *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007). However, even when someone is not found to be similarly situated to others, he is entitled to a determination of whether the distinction is arbitrary or rationally related to a legitimate penological objective. *Bills v. Dahm*, 32 F.3d 333, 336 (8th Cir. 1994) (citing *Parham v. Hughes*, 441 U.S. 347 (1979)).

To avoid summary judgment, Plaintiff must "identify affirmative evidence from which a jury could find proof of the pertinent motive, [religious] discrimination." *Lewis*, 486 F.3d at 1028. Just as the Eighth Circuit found in *Patel*, in this case Plaintiff has not presented any evidence that the Defendants acted with a discriminatory purpose. When presented with kosher requests from Plaintiff, Tiger Defendants consulted with multiple dieticians, and conducted research concerning kosher dietary laws. (ECF No. 166-1; 166-2; 166-3). The Clark County Defendants consulted with an individual holding himself out as an "an expert in Judaism and Judaic studies" regarding their policies and practices concerning Plaintiff's religion, fielded many changing requests from Plaintiff, provided a microwave designated for kosher meals, and purchased kosher meals locally

when necessary.  From the evidence, the conclusion must be that it was the Defendants intention to accommodate Plaintiff's religion, rather than discriminate against it.

Viewing in the light most favorable to the Plaintiff, the proof supports no individual or official capacity liability with respect to Plaintiff's due process claims.  The Defendants are entitled to summary judgment in this regard.

### 3. Establishment Clause

Plaintiff's fourth claim is brought under the Establishment Clause, with Plaintiff arguing that Defendants tried to prevent him from practicing his Jewish religious beliefs, tried to forced him to participate in Christmas and listen to Christian worship services, and provided extra food from the kitchen to non-Jewish inmates.  According to the Supreme Court in *Lee v. Weisman*, "at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise."  505 U.S. 577, 587 (1992).  *See also Munson v. Norris*, 435 F.3d 877, 880-81 (8th Cir. 2006).

The Supreme Court has repeatedly held that the Constitution "affirmatively mandates accommodation, not merely tolerance, of all religions, and forbids hostility toward any." *Lynch v. Donnelly*, 465 U.S. 668, 673 (1984).  In *Lynch*, the Supreme Court stated, "[a]nything less would require the 'callous indifference' we have said was never intended by the Establishment Clause." *Id*. (citations omitted); *see also Hobbie v. Unemp. App. Comm'n of Fla*., 480 U.S. 136, 144–45 (1987) ("This Court has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause.").

Although Plaintiff alleges that he was forced to participate in Christmas by the offering of a "Christmas" meal and that he was forced to listen to Christian worship services, the Defendants

establish proof which negates those claims.  In contrast, Plaintiff's allegations are supported by only by Plaintiff's self-serving declarations and grievances. The undisputed proof shows that although individual churches are allowed to host a brief prayer or worship service in the CCDC day room, no inmate is forced to participate; the inmates are free to leave and return to their cells; that no religion is prevented from volunteering to host such an event; and, that there is no sanctioned "Christmas" meal at the CCDC.  (ECF No. 160-4).  Plaintiff's self-serving declaration, and the other evidence he submitted allegedly in support of his claims do not effectively refute Defendants' proof.  There is simply no summary judgment proof, even when viewed most favorably to the Plaintiff, to support an Establishment Clause claim that Defendants "coerce[d] [Plaintiff] to support or participate in religion or its exercise." *Lee*, 505 U.S. 577, 587 (1992).

Defendants are entitled to summary judgment on Plaintiff's individual and official capacity claims under the Establishment Clause.[6]

### C.  Retaliation

Plaintiff's fifth claim is for "retaliation" against Defendants Watson, Funderburk, Lesher, Atkins, Phillips, and Piggee.  (ECF No. 140 at 10).  Plaintiff states that he was retaliated against by Defendants "withholding foods, feeding minute portions, taking Plaintiff's wedding band while similarly situated persons were allowed to keep theirs, refusing to order proper Kosher foods, allow Plaintiff to be assaulted then refused medical care to allow Plaintiff to file hate crime charges, put on suicide watch, and blocking Plaintiff's access to courts." *Id*.

"To prevail on a § 1983 claim for retaliation in violation of the First Amendment, [a Plaintiff] must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from

---

[6] Plaintiff's claim that "Defendants tried to hinder Plaintiff and try to get Plaintiff to stop practicing his sincerely held Jewish religious beliefs" amounts to a Free Exercise claim which was discussed above.

continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity.*" Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir.2004)).

The courts have recognized that "[r]etaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).  Prison officials must have broad administrative authority. *Graham,* 89 F.3d at 79.  Therefore, "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001)(not every response to a prisoner's exercise of a constitutional right is actionable). *See also Turner v. Mull,* 784 F.3d 485 (8th Cir. 2015) (mere timing of events alone does not establish the requisite causal link); *Atkinson v. Bohn,* 91 F.3d 1127, 1129 (8th Cir.1996)(per curiam)(speculative and conclusory allegations cannot support a retaliation claim).

Plaintiff's claim for retaliation fails as he presents *no* proof, beyond pure speculation, that any of accused Defendants' actions were "motivated at least in part" by the Plaintiff's exercise of a protected activity.  In addition to facts concerning Plaintiff's kosher diet and an assault by an inmate more fully discussed fully in other sections of this order, Plaintiff also claims that the requirement that he remove his wedding ring was a retaliatory decision.  It is undisputed that CCDC policy required the removal of jewelry upon intake; and, that any deviation from that policy was due to an inability to remove a ring from an inmate's hand.  (ECF No. 160-4 at 2).  Plaintiff's claims for retaliation fails as he presents *no* proof, beyond pure speculation, that any of accused Defendants' actions were "motivated at least in part" by the Plaintiff's exercise of a protected activity.

Plaintiff's retaliation claims are subject to summary dismissal.

### D.  Due Process Claims

In his sixth claim, Plaintiff claims his due process rights were violated.  In this claim, Plaintiff again argues the Defendants "failed to properly feed" him in accordance with his religion. This allegation is most properly analyzed as a Free Exercise claim which has been discussed above. Plaintiff also argues that his constitutional rights were violated when he was assaulted by another inmate "due to his religion and sexuality."  (ECF No. 140 at 11).  Plaintiff next claims that he was refused medical treatment for his injuries and was not allowed to file hate crime charges following the assault.  *Id*.  Finally, Plaintiff claims that his constitutional rights were violated when he was "put on suicide watch on January 31, 2021 for not eating unkosher breakfast."  *Id*.

As a pretrial detainee, Plaintiff's claims are analyzed under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's prohibition of cruel and unusual punishment.  *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007).   However, "[t]his makes little difference as a practical matter, though:  Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."  *Id*.

First, Plaintiff argues that he was assaulted by another inmate "due to his religion and sexuality."  Plaintiff generally argues that Defendants should not have housed the offending inmate with him.  Clearly, prison officials have a duty, under the Eighth Amendment, to protect prisoners from violence at the hands of other prisoners.  *See Perkins v. Grimes,* 161 F.3d 1127, 1129 (8th Cir. 1998).  However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety."  *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

To prevail on a failure to protect claim, Plaintiff must satisfy a two prong test: (1) that he was "incarcerated under conditions posing a substantial risk of serious harm;" and (2) that the prison officials were "deliberately indifferent [to his] health or safety." *See Holden v. Hirner,* 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted). The first prong is an objective requirement to ensure the deprivation is a violation of a constitutional right. *Id.* The second, however, is subjective requiring Plaintiff show the official "both knew of and disregarded 'an excessive risk to inmate health or safety.'" *Id. (quoting Farmers,* 511 U.S. at 837). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk,* 508 F.3d 868, 873 (8th Cir. 2007). Negligence alone is insufficient to meet the second prong, instead, the official must "recklessly disregard a known, excessive risk of serious harm to the inmate." *Davis v. Oregon County,* 607 F.3d 543, 549 (8th Cir. 2010) (internal quotation marks and citation omitted). Furthermore, "[c]laims under the Eighth Amendment require a compensable injury to be greater than *de minimis*." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

Plaintiff's claim in this respect fails for multiple reasons. Plaintiff's attempted "failure to protect" claim fails because Plaintiff has presented no proof that any Defendant "recklessly disregarded a known, excessive risk of serious injury." Although Plaintiff argues the inmate who assaulted him was a Muslim and was being held on assault charges, there is no proof that the Arkansas Department of Corrections inmate was known to be dangerous *to* Plaintiff during confinement at the CCDC. (ECF No. 183-1 at 3). Plaintiff does not even allege the Defendant knew of the danger to himself.

There is likewise no proof that Plaintiff was denied medical care. The proof shows that Plaintiff requested medical care following the assault and that he was seen by Dr. Elkins on several

occasions.  (ECF No. 160-4 at 3).  It appears that Plaintiff's true argument concerns the *quality* of Dr. Elkins' examinations.  It is well settled that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted).  An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* (internal citations omitted).  Plaintiff makes no such showing in this regard.

Further, Plaintiff's claim he was prevented from filing "hate crime charges" also fails in this regard.  Defendant Lesher's affidavit states that he spoke with the Criminal Investigation Department and there was not enough evidence that would justify bringing criminal charges against the inmate who allegedly assaulted Plaintiff.  This decision was due to the lack of injuries, witnesses, or other proof of an assault.  (ECF No. 160-4 at 3-4).  Further, the decision to bring criminal charges is simply not in the hands of the Defendants *or* the Plaintiff.

With respect to Plaintiff's placement on suicide watch, the proof shows that the move occurred in January of 2021, following Plaintiff's refusal to eat several meals in a row.  (ECF No. 160-6 at 2).  Testimony has been presented that Plaintiff was moved from his cell to one that created a safer environment for the inmate and so that Plaintiff could be more easily observed by jail staff.  *Id*.  Defendant Phillips' affidavit states Plaintiff was on suicide watch for roughly 4-5 hours to ensure he was not a danger to himself and that after it was deemed Plaintiff was not a danger to himself, and he was taken off suicide watch.  *Id*.   Segregating a pretrial detainee and placing him on suicide watch is not unconstitutional when the inmate has displayed or expressed self-harming behavior.  *See Daniels v*. Woodside, 396 F.3d 730, 735 (6th Cir. 2005); *Conway v. Henze,* 14 Fed. Appx. 645, 650-51 (7th Cir. 2001); *Coleman v. Holladay*, 2018 WL 4137044 (Aug.

7, 2018); *Wells v. Coleman,* 2012 WL 601238 (E.D. Ark. Feb. 7, 2012).  Although Plaintiff states he was not moved from the cell  in which he was observed for seven (7) days, a prisoner has no right to be housed in a location of his choosing.  *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Defendants are entitled to summary judgment on Plaintiff's due process claims.

### E.  False Representation of Kosher Food

Plaintiff's last claim is for "false representation of Kosher food."  (ECF No. 140 at 12).  Plaintiff seems to base his claim, and specific prayer for damages, on an Arkansas statute criminal statute, Arkansas Code Ann. § 20-57-401, "False Representation of Kosher Food."  *Id*.  The Arkansas statute creates no private right of action, and Plaintiff's claim should, accordingly, be dismissed.  *See Young v. Blytheville Sch. Dist.*, 425 S.W.3d 865, 871-72 ("Because the [Arkansas Public Education] Act does not expressly provide for a private right of action or for any kind of remedy, the trial court did not err in" dismissing the plaintiff's claim); *Baptist Health v. Murphy*, 200 S.W.3d 800, 811 n.5 (2006) (explaining that the Arkansas Medicaid Fraud Act and the Arkansas Medicaid Fraud False Claims Act "create no private right of action").

To the extent Plaintiff seeks to pursue a state civil claim for fraudulent misrepresentation, I recommend the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claim.  *See* 28 U.S.C. § 1367(c)(3) (recognizing a district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction").

### F.  Qualified Immunity

The Defendants alternatively argue that they are entitled to qualified immunity with respect to Plaintiff's claims.  The Court, having found that the facts do not make out a constitutional violation finds that the Defendants are entitled to qualified immunity with respect to each of

Plaintiff's constitutional claims. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

## IV. CONCLUSION

For the foregoing reasons, it is recommended:

1.  The Renewed Motion for Summary Judgment by County Defendants (ECF No. 160) be **GRANTED**,

2.  The Second Motion for Summary Judgment on Behalf of Separate Defendants, Brenda Piggee, Halbert Torraca, James Gainous, and Tiger Correctional Services, Inc. (ECF No. 164) be **GRANTED**, and

3.  Plaintiff's Second Amended Complaint be **DISMISSED** with prejudice.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this 6th day of June 2022.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE