IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JONATHAN ROBERT
JENNINGS WALKER                                                    PLAINTIFF

v.                          Case No. 6:20-cv-6114

SHERIFF JASON WATSON, *et al*.                                      DEFENDANTS

## ORDER

Before the Court is a Report and Recommendation issued by the Honorable Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas. ECF No. 211. Plaintiff has filed objections. ECF No. 216. The Court finds the matter ripe for consideration.

## I. BACKGROUND

The factual background to this matter is voluminous and has different dimensions that reflect Plaintiff's several claims against Defendants. Plaintiff brings three claims under the First Amendment based on alleged infringement of his free exercise of religion, establishment of religion, and retaliation for filing an initial lawsuit. Plaintiff brings two claims under the Fourteenth Amendment based on alleged violations of his right to equal protection and right to constitutional conditions of confinement. Plaintiff brought a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, alleging infringement on the exercise of his religion. Plaintiff also brought a claim under Arkansas Code § 20-57-401, alleging misrepresentations of non-kosher foods as kosher. The Court attempts to provide the most succinct and clearest recitation of the facts underlying these claims.

On August 6, 2020, Plaintiff became a pretrial detainee at the Clark County Detention Center ("CCDC"). Upon entry and intake into the CCDC, Plaintiff informed the jail staff that he

was Jewish and required a strict kosher diet.  At the time of Plaintiff's detainment, the CCDC had a contractual agreement with Tiger Correctional Services ("Tiger") to provide meals and other food services for its inmates and detainees.  Plaintiff began receiving sack meals on August 9, 2020.  There is a documented request by Plaintiff for kosher meals dated August 9, 2020, in which Plaintiff asserts that the foods he had been served were not compliant with kosher requirements because of different cross contamination occurring with pork products.  The CCDC Jail Administrator at that time, Michael Lesher, responded stating that pork products were not being served at the CCDC.  Plaintiff also asserts that the sack meals contained meat and dairy products within the same meal, which is also in violation of kosher requirements.  Plaintiff asserts that at the onset of his detainment the bagged of chips in the sacked meals was the only food he could eat for a roughly ten-day period.

Tiger was not informed of Plaintiff's request for kosher meals until August 16, 2020.  Tiger staff then began serving Plaintiff a Common Fare diet that a registered dietician had informed them was kosher compliant.  Plaintiff first received a Common Fare meal on August 16, 2022. Thereafter, in preparing Plaintiff's meals, CCDC staff attempted to comply with what they believed were kosher requirements.  These efforts included giving Plaintiff disposable utensils that were never in contact with non-kosher foods, washing cookware used to prepare Plaintiff's meals in a dedicated sink, and serving Plaintiff's meals in disposable styrofoam trays that were never in contact with non-kosher food.

Tiger began serving Plaintiff prepacked meals from HMR[1] around mid-October 2020. Tiger believed these pre-packaged foods were kosher compliant after consulting with a registered dietician who stated that the HMR meals were kosher.  Plaintiff raised complaints regarding the

---

[1] "HMR" refers to HMR Weight Management Services Corp., a company that sells pre-packed meals.  *See* HMR Food, https://www.hmrprogram.com/ (last accessed Sept. 30, 2022).

HMR meals, asserting that these meals violated certain kosher principles, such as having meat and dairy items in the same meal.  Plaintiff began receiving different pre-packaged foods on November 21, 2020, which Plaintiff does not dispute complied with kosher requirements.  However, Plaintiff asserts that between November 21, 2020, and May 9, 2021, various other food items provided to supplement the pre-packed kosher items were not kosher compliant.  From October 2020 until April 2021, Plaintiff filed multiple grievances complaining that the food he was receiving was not kosher compliant.  Plaintiff asserts that he began to receive genuine kosher compliant foods on May 10, 2021.  Plaintiff also asserts that he was informed by CCDC Jail Administrator Michael Lesher that kosher foods could not be delivered or dropped off at the CCDC.  According to Fred Phillips, who became CCDC Jail Administrator on January 1, 2021, Plaintiff is the only known inmate under the present Clark County administration to request a kosher diet.

Fred Phillips asserts that after he became Jail Administrator, the CCDC consulted with an individual they believed could inform them of proper kosher dietary requirements.  Fred Phillips also asserts that CCDC staff would purchase food at local grocery stores in an attempt to provide Plaintiff with kosher food items when Tiger was unable to provide kosher compliant meals.  Around mid-January 2021, Plaintiff received access to a microwave meant for his personal use to avoid cross-contamination with other food items.  Plaintiff asserts that there were occasions when other individuals used the microwave when he was not present.

During Christmas season, CCDC permits local churches to provide holiday meals and host prayer and church services within the CCDC common day room.  No inmate is denied participation in the meal or church service and no inmate is forced to participate.  Plaintiff asserts that he was forced to hear the Christmas services due to his proximity to the day room.  CCDC staff assert that no denomination is prevented from donating meals and that meals from Tiger are still available

during the Christmas season.  Plaintiff asserts that on December 25, 2020, he only received breakfast from Tiger and that the only available lunch meal was the non-kosher Christmas meal brought in by local volunteers.  CCDC staff assert that other food apart from the Christmas meal is available to inmates on Christmas day.

On September 28, 2020, Plaintiff's wedding ring was confiscated by CCDC staff.  Plaintiff asserts that other inmates were permitted to keep jewelry items on their person.  CCDC staff assert that CCDC policy prohibits jewelry, thus Plaintiff's ring should have been confiscated during intake but was overlooked.

Plaintiff alleges that he was assaulted by an Arkansas Department of Corrections inmate who was temporarily housed in the CCDC in November 2020.  Plaintiff states that he reported the assault the day after the incident, while Michael Lesher disputes that Plaintiff immediately reported the assault.  Michael Lesher states that at the time Plaintiff reported the assault, he had no apparent physical injuries or physical markings.  Plaintiff contends that he had internal injuries.  Plaintiff made a medical request and was eventually seen by Dr. Elkins on multiple occasions after his request.  Michael Lesher states that he consulted with the Criminal Investigation Department regarding this assault and that the conclusion was that there was not enough evidence to bring any charges against the inmate Plaintiff alleges assaulted him.  Michael Lesher founded this decision on the lack of apparent injuries, witnesses to the assault, or other proof.

In January 2021, Plaintiff was placed on suicide watch after he refused to eat numerous consecutive meals.  Plaintiff was placed in a particular cell and was on suicide watch for approximately four to five hours in order to ensure that he was not a danger to himself.  After determining Plaintiff was not a danger to himself, CCDC staff took him off suicide watch but kept him in that particular cell for seven days.

4

Plaintiff was transferred out of the CCDC on April 14, 2022, and is now an inmate in the Arkansas Department of Corrections.

On October 1, 2020, Plaintiff filed his initial complaint. ECF No. 1. The Court subsequently granted Plaintiff leave to proceed in forma pauperis ("IFP"). ECF No. 3. Plaintiff eventually submitted his Second Amended Complaint (ECF No. 140) against Defendants Sheriff Jason Watson, Chief Deputy Raymond Funderburk, Jail Administrator Michael Lesher, Jail Sergeant Clay Atkins, Jail Administrator Fred Phillips, Halbert Torraca, James Gainous, Brenda Piggee, and Tiger Correctional Services, Inc.[2] The Second Amended Complaint is the operative complaint in this matter. In his complaint, Plaintiff seeks a mix of compensatory and punitive damages along with certain injunctive relief and declaratory judgments. *Id*. at p. 13.

On December 13, 2021, Defendants Sheriff Jason Watson, Chief Deputy Raymond Funderburk, Jail Administrator Michael Lesher, Jail Sergeant Clay Atkins, and Jail Administrator Fred Phillips filed their motion for summary judgement. ECF No. 160. That same day, Defendants Halbert Torraca, James Gainous, Brenda Piggee, and Tiger Correctional Services, Inc. filed their motion for summary judgment. ECF No. 164. On February 11, 2022, Plaintiff responded in opposition to both motions. ECF No. 181. Defendants have replied. ECF Nos. 189 and 192.

On June 6, 2022, Judge Bryant issued the instant report and recommendation, recommending that Defendants' motions for summary judgment be granted and Plaintiff's Second Amended Complaint (ECF No. 140) be dismissed with prejudice. ECF No. 211, p. 27. On July 25, 2022, Plaintiff filed his objections. ECF No. 216.

## II. LEGAL STANDARD

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as

---

[2] Plaintiff also brought claims against Defendant Joyce Lamilla, which the Court previously dismissed without prejudice. ECF No. 209.

to any material fact and the movant is entitled to judgment as a matter of law." *Hess v. Union Pac. R.R. Co.*, 898 F.3d 852, 856 (8th Cir. 2018) (citation omitted). Summary judgment is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *See id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in the light most favorable to the nonmoving party. *See Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *See Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A party that fails to respond to any basis of a motion for summary judgment effectively waives any argument in opposition to that aspect of a motion for summary judgment. *See Department of Labor v. EJ's Cleaning Services, Inc.*, 2020 WL 1432048 at *1 (E.D. Ark. March 19, 2020) (citing *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009)).

Title 42 U.S.C. § 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim under § 1983, a plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).  "Qualified immunity shields public officials from liability for civil damages if their conduct did not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dillard v. O'Kelly*, 961 F.3d 1048, 1052 (8th Cir. 2020) (quotation omitted).

Claims brought pursuant to § 1983 can be against a defendant in their individual or official capacity.  *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998).  "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Id*.  Individual capacity claims are those which are alleged against the individual actions of a defendant during the course of their duties. *Id*.  "To establish personal liability of the supervisory defendants, [a plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (citations omitted).  A defendant's general responsibility of supervising a prison or detention facility is insufficient to establish individual involvement for a § 1983 claim.  *See Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir.1987).

### III. DISCUSSION

Plaintiff has filed various objections to Judge Bryant's recommendation.  The Court finds that the objections are specific enough to trigger a de novo review of Judge Bryant's

recommendations.  *See Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (specific objections shift a court's review from one which scrutinizes for plain error to one in which the issues are reviewed *de novo*); *see also* 28 U.S.C. § 636(b)(1).  Some of the objections are an overarching critique of Judge Bryant's report and recommendation, while others are directed at the conclusions regarding Plaintiff's claims.  The Court will address the broad objections first, and then proceed to address the objections Plaintiff directed at Judge Bryant's recommendations regarding his claims.

### A. Plaintiff's General Objections

Plaintiff has submitted broad and overarching objections to Judge Bryant's objectivity and his recitation and assessment of the factual record.  ECF No. 216, p. 12-36.  Plaintiff asserts that Judge Bryant has displayed clear bias against him throughout this matter and states that this is exhibited in the determination that the Defendants' version of facts is the most persuasive.  *Id*. at p. 12-13.  Plaintiff declares that he wants to rescind his consent to having a magistrate judge preside over this matter and that Judge Bryant does not have any authority to preside over his case.  *Id*. at p. 13-16.  Plaintiff also objects to Judge Bryant's recitation of the factual background in the report and recommendation.  *Id*. at p. 17-36.  Plaintiff specifically objects to Judge Bryant's statement that not all the exhibits attached to Plaintiff's response were relevant, and then describes the relevance of roughly twenty-three of the exhibits he attached to his response.  *Id*. at p. 18-25.  Plaintiff also objects to Judge Bryant citing to the Defendants' exhibits, depositions, and statements more often when reciting the factual background of this matter, asserting that he has presented facts and exhibits that contradict that recited record.  *Id*. at p. 26-36.

The Court is not persuaded by these general objections.  Plaintiff has misconstrued adverse rulings and the application of law unfavorable to his positions as evidence of bias.  Also, as the

Court similarly determined in an earlier order (ECF No. 113, p. 2-3), Plaintiff has not presented "extraordinary circumstances" that would justify revoking a referral to a magistrate judge under Federal Rule of Civil Procedure 73(b)(3). The Court finds that Plaintiff's objection to Judge Bryant's synthesis of the record is not persuasive. Some of the exhibits Plaintiff attached to his response, such as the food regulations from the Idaho Department of Correction (ECF No. 183-2) are indeed of little relevance. As for the general summation of the record, which was extensive, [3] the Court finds that Judge Bryant is accurate in reciting the undisputed material facts for this matter. For any facts that Plaintiff asserts are material and specifically attempts to dispute, the Court will address them when analyzing Judge Bryant's recommendations for Plaintiff's claims.

### B. Claim Objections

### 1. RLUIPA Claim

Plaintiff brings a claim pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, against all Defendants in their official capacities. ECF No. 140, p. 6. Plaintiff supports this claim by asserting that the CCDC's failure to provide him with kosher meals have hindered him from practicing his religious beliefs. *Id.* Plaintiff asserts that the custom or policies that violated his rights were the "Arkansas Jail Standards Policy (AJSP) § 12-1001 et seq.; 42 U.S.C. § 2000cc; Clark County Detention Center Policy (CCDCP) 017 (IV)(A); AJSP § 6-1001 et seq." *Id.* at p. 7.

Judge Bryant recommends that all Defendants be granted summary judgment for Plaintiff's RLUIPA claim. ECF No. 211, p. 15. Judge Bryant notes that only injunctive relief is available for official capacity claims under RLUIPA. *Id.* Therefore, Judge Bryant determines that Plaintiff's claim became moot when he was transferred out of the CCDC because the relief he requested no

---

[3] Plaintiff's filings in response to the motions for summary judgment total nearly 1000 pages of arguments and exhibits. ECF Nos. 181, 182, 183.

longer applies to his current situation.  *Id*.  Judge Bryant concludes that Defendants should be granted summary judgment for this claim.  *Id*.

Plaintiff's objection contends that he only requested declaratory relief for this claim.  ECF No. 216, p. 36-37.  Plaintiff also asserts that Judge Bryant's recommendation of summary judgment for this claim is improper because a moot claim is not determined on the merits and therefore not subject to a summary judgment outcome.  *Id*. at p. 37.

The Court finds that Judge Bryant's determination that this claim is moot is correct.  The Eighth Circuit has held that RLUIPA claims do not permit claims for monetary damages and that injunctive relief is the only relief available for official capacity claims under RLUIPA.  *See Van Whye v. Reisch*, 581 F.3d 639, 652-55 (8th Cir. 2009).  Once an inmate is transferred out of the facility that is the subject of his RLUIPA claim, that claim becomes moot.  *See Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) ("Because Zajrael is no longer subject to the policies that he challenges, there is no live case or controversy."); *see also Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.").  Plaintiff is correct in his assertion that a moot claim is dismissed for lack of subject matter jurisdiction and not subject to summary judgment on the merits.  *See Ali v. Cangemi*, 419 F.3d 722, 723-24 (8th Cir. 2005) (noting that a moot matter is no longer a live Article III case or controversy that a court has jurisdiction over and must be dismissed).  Therefore, the ultimate result for Plaintiff's RLUIPA claim must be dismissal without prejudice because the claim is now moot due to Plaintiff's relocation out of the CCDC.

### 2. Free Exercise Claim

Plaintiff brings a claim for violation of his right to "free exercise" of his religion against all Defendants in their individual and official capacities. ECF No. 140 at p. 8. Plaintiff asserts that Defendants attempted to hinder the exercise of his Jewish faith by intentionally depriving him of a kosher diet and forcing him to participate in Christian activities. *Id*. Plaintiff asserts that the customs or policies that violated his rights were the "CCDFP 017(IV)(A); AJSP § 8-1001 & 1002; AJSP § 10-1008 to 1011; AJSP § 12-1001 et seq.; 1st Amendment to the [United States] Constitution; Article 2 § 24 to the [Arkansas] Constitution; AJSP § 6-1001 et seq." *Id*. at p. 9.

Judge Bryant recommends that all Defendants be granted summary judgment for Plaintiff's claim under the free exercise clause of the First Amendment. ECF No. 211, p. 16-18. Judge Bryant first notes that free exercise claims in the prison context require a showing of greater than intermitted denial of an inmate's ability to practice their religion. *Id*. at p. 16-17. Judge Bryant further notes that the Eighth Circuit has determined that § 1983 claims alleging a deprivation of the right to free exercise generally require showing that there was a standing policy that violates the right to free exercise. *Id*. at p. 17. Turning to the factual record, Judge Bryant determines that Defendants made good faith efforts to accommodate Plaintiff's religious dietary requirements and that Plaintiff has failed to show that their failures to adhere to kosher requirements were pursuant to any policy or the result of their intentional mistakes that created a de facto policy of refusing to adhere to religious dietary requirements. *Id*. at p. 17-18. Judge Bryant concludes that Plaintiff has failed to show that there is a genuine dispute as to the material facts for his free exercise claim and that all Defendants are entitled to summary judgement on this claim. *Id*. at p. 18.

Plaintiff's objection argues that Judge Bryant erred in concluding that there is no genuine dispute as to his free exercise claim. ECF No. 216, p. 37-39. Plaintiff first contends that Judge

Bryant's reliance on *Mbonyunkiza v. Beasley*, 956 F.3d 1048 (8th Cir. 2020) is a mistake because of the factual differences between that matter and his case. *Id*. at p. 37-38.  Plaintiff notes that the inmate in *Mbonyunkiza* alleged only four instances in which his religious dietary requirements were not respected, while Plaintiff contends that he spent nearly nine months in the CCDC unable to practice his religion because of the food he was served. *Id*.  Plaintiff then reiterates his general arguments that Defendants burdened and restricted his religion.  *Id*. at p. 38-39.

"Prison inmates retain constitutional rights protected by the First Amendment, including the right to free exercise of religion." *Fegans v. Norris*, 537 F.3d 897, 902 (8th Cir. 2008) (citing *O'Lone v. Shabazz*, 482 U.S. 342, 348, (1987)).  The threshold issue for a free exercise claim under § 1983 is whether the governmental regulation or policy "infringes upon a sincerely held religious belief." *Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 983 (8th Cir. 2004) (quotations and citations omitted).  The challenged activity that an inmate claims infringes upon or substantially burdens the free exercise of his religion must be a statute, regulation, or policy.  *See Mbonyunkiza*, 956 F.3d at 1054-55.  Negligent acts or mistakes are not subject to free exercise claims under § 1983 unless the failures and mistakes are so pervasive that they can support an inference that there was a de facto policy of ignoring an inmate's right to free exercise of his religious beliefs.  *See id*. at 1055.

The Court agrees with Judge Bryant's conclusion.  Plaintiff never alleges that there is an official policy or regulation at the CCDC that infringes on his free exercise of religion and its dietary requirements. *See Mbonyunkiza*, 956 F.3d at 1054-55.  Also, the Court finds that Plaintiff's factual allegations about the individual actions of Defendants do not create a genuine question of fact as to whether there was a de facto policy within the CCDC to deny him his right to exercise his religion.  *See id*.  Instead, the Court finds that the CCDC made substantial efforts to

accommodate Plaintiff's kosher dietary needs, which were novel and demanding requirements for the CCDC.  These efforts included the changed procedures for preparing and delivering Plaintiff's food, attempting to find outside pre-packaged foods that would adhere to kosher requirements, consulting with individuals that Defendants believed could guide them on what foods complied with kosher demands, and obtaining a microwave for Plaintiff to prepare food without "cross-contamination" with non-kosher foods.  While these efforts could be seen as bumbling, inconsistent, and oftentimes ignorant of who needed to be consulted for an accurate determination of kosher requirements, they do not indicate that there is a genuine question as to whether Defendants' actions amount to a de facto policy of infringing on Plaintiff's right to free exercise. Accordingly, the Court finds that Plaintiff has failed to show that there is a genuine dispute as to whether Defendants imposed any policy that infringed upon his right to freely exercise his religion. Therefore, all Defendants are entitled to summary judgment on this claim.

### 3. Equal Protection Claim

Plaintiff brings a claim for violations of his right to "equal protection" against all Defendants in their individual and official capacities.  ECF No 140, p. 7.  Plaintiff asserts that he has been treated in a lesser manner as an inmate because of his religious beliefs when compared to similarly situated inmates.  *Id*.  Plaintiff asserts that the customs or policies that violated his rights were the "AJSP § 8- 1001 to 1002; AJSP § 12-1001 et seq.; AJSP § 10-1001 et seq.; 14[th] Amendment to the United States Constitution (U.S Constitution); Article 2 § 3 to the Arkansas Constitution (AR Constitution)."  *Id*. at p. 8.

Judge Bryant recommends that Defendants be granted summary judgment for Plaintiff's equal protection claim.  ECF No. 211, p. 18-20.  Judge Bryant notes that an equal protection claim in this context requires affirmative evidence that any differing treatment was motivated by an intent

to discriminate based on Plaintiff's religion. *Id*. at p. 19. Applying that requirement to the record, Judge Bryant determines that Plaintiff has failed to put forth evidence that Defendants acted with discriminatory purpose in any differing treatment between Plaintiff and similarly situated inmates. *Id*. at p. 19-20.

Plaintiff objected to Judge Bryant's determination for this claim. ECF No. 216, p. 39-42. First, Plaintiff asserts that Defendants' failures to consult with properly accredited experts on kosher dietary requirements demonstrates their discrimination. *Id*. at p. 39. Plaintiff also argues that various incidents demonstrate discriminatory intent, such as the confiscation of his wedding ring, the additional food other inmates received, allowing non-kosher food to be donated while not requiring kosher foods also be donated, and the microwave meant to be exclusive to Plaintiff being used by others. *Id*. at p. 40-41. Plaintiff also asserts a variety of antisemitic slights and slurs that he observed CCDC staff make, though he cites to nothing in the record to support these assertions.

The Equal Protection Clause of the Fourteenth Amendment asserts that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. "The Equal Protection Clause requires that the government treat all similarly situated people alike." *Barstad v. Murray County*, 420 F.3d 880, 884 (8th Cir. 2005); *see also Washington v. Davis*, 426 U.S. 229, 239 (1976) ("The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race."). The Fourteenth Amendment requirement to treat similarly situated people alike "extends to prison inmates." *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999). Differing treatment of similarly situated individuals "is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (quotation omitted); *see also Personnel Adm'r of Mass v. Feeney*, 442 U.S. 256, 273

(1979). "Discriminatory purpose can be proved with various kinds of direct and circumstantial evidence but is most often proved with evidence that similarly situated inmates were treated differently." *Lewis*, 486 F.3d at 1028. (citation omitted).

The Court agrees with Judge Bryant's conclusion. Plaintiff has not presented the affirmative evidence necessary to show that any differing treatment he encountered in the CCDC was motivated by his religion. The issue Plaintiff raised regarding inadequate research on kosher foods only suggests ignorance on Defendants' part instead of any malice. As the record indicates, the CCDC did not have experience with kosher diet requirements or have a significant amount of kosher food available. Therefore, the Court views the extra food Plaintiff asserts that other inmates received as simply the result of having more non-kosher food available. Regarding Plaintiff's assertion that the CCDC specifically prohibited the donation or outside delivery of kosher food, the Court finds that the exhibit Plaintiff cites to support that assertion (ECF No. 183-27) does not actually suggest a prohibition. Rather, Plaintiff's grievance about outside food deliveries to other inmates is answered by CCDC staff who inform Plaintiff that no inmate is receiving outside food deliveries, whether kosher or not. ECF No. 183-27, p. 2. Also, Plaintiff does not cite to any compelling evidence in the record to support his assertions regarding other inmates being allowed to keep their jewelry or the antisemitic remarks from CCDC staff. Plaintiff's grievance regarding his ring (ECF No. 183-29) is answered by CCDC staff stating that the rule against jewelry was enforced against Plaintiff once they realized there was a policy violation. Also, the grievances filed by Plaintiff regarding the microwave (ECF No. 183-28) indicate that CCDC staff were not aware of who was improperly using the microwave and were responsive to Plaintiff's requests to keep it exclusive to him. Rather than demonstrate unequal treatment motivated by discrimination purpose, the Court finds that the record only demonstrates that the CCDC staff attempted to

accommodate Plaintiff even though his religious requirements were atypical and more demanding that what is typically necessary for other inmates. Because the Court finds that there is no genuine question as to whether any differing treatment was the result of purposeful discrimination based on Plaintiff's religion, all Defendants are entitled to summary judgment on this claim. *See Lewis*, 486 F.3d at 1028.

### 4. Establishment Clause Claim

Plaintiff brings a claim for violation of his right to be free from an "establishment of religion" and is against all Defendants in their individual and official capacities, with the exception of Defendant Sergeant Clay Atkins, who was not named in this claim. ECF No. 140, p. 9. Plaintiff asserts that these Defendants attempted to hinder the practice of his religion, forced him to participate in Christian religious acts, and gave greater accommodation to the religious beliefs of other similarly situated inmates. *Id.* Plaintiff asserts that the customs or policies that violated his rights were the "CCDFP 017; AJSP § 12-1001 et seq.; 1st Amendment to the [United States] Constitution; AJSP § 6-1001 et seq.; Article 2 § 24 to the [Arkansas] Constitution." *Id.* at p. 10.

Judge Bryant recommends that these Defendants be granted summary judgment on Plaintiff's establishment clause claim. ECF No. 211, p. 20-21. Judge Bryant determines that Defendants have provided evidence to negate any suggestion by Plaintiff that he was forced to participate in any Christian activities at the CCDC or that the CCDC has a policy of preferential treatment of Christianity. *Id.* This is based on Defendant Michael Lesher's sworn statement (ECF No. 160-4) that no inmate is forced to participate in any Christian services and that there is no rule prohibiting non-Christian religious groups from donating food or attempting to conduct services at the CCDC. After finding that the Plaintiff's evidence for this claim consists of simple assertions of Plaintiff's perception of coercion, Judge Bryant concludes that Plaintiff has not presented a

genuine question as to whether Defendants coerced him into participating in Christian activities. *Id*. at p. 21.

Plaintiff's objection argues that the record clearly indicates that Defendants exhibited a favoritism for Christianity and hostility toward his faith.   ECF No. 216, p. 42-44.   Plaintiff reiterates his allegations of the CCDC not permitting donations of kosher foods and harassing statements of CCDC staff.  *Id*. at p. 43-44.  Plaintiff also asserts that the CCDC allowing Christian worship services in the common room and accommodating Christian donations and decorations is clear evidence of Defendants coercing him into participating in Christian religious services.  *Id*. at p. 44.

The Establishment Clause of the First Amendment "erects a barrier between government and religious entities 'depending on all the circumstances of a particular relationship.'"  *American United for Separation of Church and State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 423 (8th Cir. 2007) (quoting *Lynch v. Donnelly*, 465 U.S. 668, 678-79 (1984)).  The Establishment Clause does not create a complete and arbitrary separation of church and state, but "affirmatively mandates accommodation, not merely tolerance, of all religions, and forbids hostility toward any." *Lynch*, 465 U.S. at 673 (citations omitted).   However, "the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'"  *Lee v. Weisman*, 505 U.S. 577, 587 (1992) (quoting *Lynch*, 465 U.S. at 678).  For claims that the state is coercing an incarcerated individual to subscribe to a religion, a three-step inquiry is conducted: "first, has the state acted; second, does the action amount to coercion; and third, is the object of the coercion religious or secular?" *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (quotations and citations omitted).

The Court agrees with Judge Bryant's conclusion.  As to the first inquiry from *Jackson*, the Court finds that Plaintiff has not created a genuine question that the Defendants ever affirmatively acted in any way.  747 F.3d at543.  Rather, permitting volunteers to donate food or hold Christian services appears to be a permissible passive accommodation to the religious beliefs of other inmates and not an active step undertaken by Defendants.  *See Lynch*, 465 U.S. at 673.  However, even if accepting donations is viewed as an active step, the second *Jackson* consideration indicates that there is no genuine question as to the coercive impact of any alleged act by these Defendants.  Plaintiff was not required to participate in any services and could go to his cell if a service was occurring.  Also, Plaintiff has not indicated that any of his benefits were revoked because of his failure to participate in Christian activities.  *See Jackson*, 747 F.3d at 542-43 (inmate had sufficiently stated a claim of coercion when his parole opportunities were tied to participation in certain faith-based substance treatment programs).

Plaintiff's claim seems to be founded on his disappointment over the lack of Jewish services or kosher donations occurring.  However, this absence seems to track with a lack of matching Jewish volunteer efforts at the CCDC and does not indicate that these Defendants prohibited the Jewish equivalent of the Christian volunteer efforts.  This is not surprising considering the CCDC's genuine lack of experience with kosher dietary requirements and the lack of previous Jewish inmates.  Defendant Michael Lesher indicates that the CCDC would permit equivalent Jewish volunteer services if any were ever presented.  In sum, the Court finds that the record shows that these Defendants accommodated what was available and volunteered regarding Christian inmates but were not hostile to Judaism or Plaintiff's religious beliefs.  *Lynch*, 465 U.S. at 673.  Accordingly, the Court finds that Plaintiff has not put forth facts that create a genuine dispute as to whether these Defendants acted in a manner to coerce Plaintiff to subscribe to a

particular religion.  *See Lee*, 505 U.S. at 587.  Therefore, all Defendants, with the exception of

Sergeant Clay Atkins, who was not named in this claim, are entitled to summary judgment on this

claim.

### 5. Retaliation Claim

Plaintiff brings a claim for violations of his right to be free from "retaliation" against

Defendants Sheriff Jason Watson, Chief Deputy Raymond Funderburk, Jail Administrator Miachel

Lesher, Jail Sergeant Clay Atkins, Jail Administrator Fred Phillips, and Brenda Piggee in their

individual and official capacities.  ECF No. 140, p. 10.  Plaintiff asserts that these Defendants

retaliated against Plaintiff's initial filing of § 1983 claims by denying him kosher food,

confiscating his wedding ring, allowing Plaintiff to be assaulted, refusing medical care and not

filing charges against his assailant.  *Id*.  Plaintiff asserts that the customs or policies that violated

his rights were the "1st Amendment to the [United States] Constitution; Article 2 § 13 to the

[Arkansas] Constitution."  *Id*. at p. 11.

Judge Bryant recommends that these Defendants be granted summary judgment on

Plaintiff's retaliation claim.  ECF No. 211, p. 21-22.  Judge Bryant determines that Plaintiff has

produced no proof beyond speculation and general coincidental timing that these Defendants took

adverse action against him because he filed his initial § 1983 complaint regarding kosher foods.

*Id*. at p. 22.

Plaintiff's objection contends that he has presented adequate proof to indicate that these

Defendants acted adversely against him for his decision to file § 1983 claims.  ECF No. 216, p.

44-47.  Plaintiff generally rehashes the failures of these Defendants to provide him with kosher

food as proof of their retaliatory motivations.  *Id*. at p. 45-46.  Plaintiff also points to the instance

he was placed on suicide watch, the confiscation of his wedding ring, and the failure to bring

charges against the inmate he alleges assaulted him as proof that these Defendants intended to retaliate against him. *Id*. at p. 46-47.

An inmate's filing of a grievance or a lawsuit is a protected First Amendment activity and actions taken in retaliation for either are actionable under § 1983. *See Gonzalez v. Bendt*, 971 F.3d 742, 744-45 (8th Cir. 2020) (citations omitted). To establish a claim for First Amendment retaliation, Plaintiff must show "(1) he engaged in a protected activity, (2) [Defendants] took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Id*. at 745 (quotation omitted). "The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for 'the exercise of a constitutionally protected right.'" *Spencer v. Jackson County Mo.*, 738 F.3d 907, 911 (8th Cir. 2013) (quotation omitted). "The key question is whether the actions were taken in retaliation for engaging in protected activity" and a plaintiff must show that the adverse action was "motivated at least in part" by filing a lawsuit. *Id*. The timing of alleged adverse events is not sufficient alone to create a genuine question for a retaliation claim and defeat summary judgment. *See Turner v. Mull*, 784 F.3d 485, 493 (8th Cir. 2015) (citation omitted).

The Court agrees with Judge Bryant's conclusion. As to Plaintiff's contentions regarding kosher food, the Court has already determined that any failures were the result of bumbling but good faith efforts to adapt to novel requirements. Also, these Defendants have demonstrated that their actions regarding Plaintiff's wedding ring were pursuant to prison policies and resulted from Plaintiff's actions. *See Spencer*, 738 F.3d at 911 (noting that a defendant can defend a retaliation claim by showing that an action was taken against an inmate because of a rule violation). Similarly, Plaintiff was placed on suicide watch for his own decision to not eat the food available

20

to him.  Further, Plaintiff's grievances regarding his assault (ECF No. 183-30) all indicate that CCDC staff attempted to comply with Plaintiff's requests in a good faith manner in investigating the assault and determining if charges against the assailant were warranted.  The mere fact that these incidents occurred after Plaintiff filed his lawsuit is not sufficient to create a genuine question as to the retaliatory motive of these Defendants.  *See Turner*, 784 F.3d at 493.   Accordingly, the Court finds that Plaintiff has not put forth proof to create a genuine question as to whether any of the alleged adverse actions taken by these Defendants were motivated by Plaintiff's exercise of a protected right. *See Gonzalez*, 971 F.3d at 745; *Spencer*, 738 F.3d at 911.  Therefore, Defendants Sheriff Jason Watson, Chief Deputy Raymond Funderburk, Jail Administrator Miachel Lesher, Jail Sergeant Clay Atkins, Jail Administrator Fred Phillips, and Brenda Piggee are entitled to summary judgment for this claim.

**6. Due Process Claim**

Plaintiff brings a claim for violations of his right to "due process" against all Defendants in their individual and official capacities.  ECF No. 140, p. 11.  Plaintiff asserts that Defendants violated his right to due process by not providing kosher food, allowing him to be assaulted by another inmate, refusing medical treatment and not filing charges against his assailant, and keeping him in the same suicide watch cell for seven days.  *Id*.  Plaintiff asserts that the customs or policies that violated his rights were the "CCDCP 11; CCDCP 18; AJSP § 8-1001 et seq.; AJSP § 10-1001 et seq.; AJSP § 12-1001 et seq.; 14th Amendment to the [United States] Constitution; Article 2 § 8 to the [Arkansas] Constitution."  *Id*. at p. 12.

Judge Bryant recommends that Defendants be granted summary judgment for Plaintiff's due process claim.  ECF No. 211, p. 23-26.  Judge Bryant determines that Plaintiff has failed to present proof that Defendants recklessly disregarded the known risk Plaintiff alleges was present

because of the inmate who assaulted him.  *Id*. at p. 24.  Similarly, Judge Bryant determines that Plaintiff has not shown that he was denied medical care.  *Id*. at p. 24-25.  Rather, Judge Bryant determines that Plaintiff simply disagrees with the conclusions of the medical personnel that examined him and with the quality of care after the alleged assault.  *Id*.  As to placing Plaintiff on suicide watch, Judge Bryant notes that segregating a pretrial detainee that has displayed self-harming behaviors is not unconstitutional.  *Id*. at p. 25-26.

Plaintiff's objection argues that Judge Bryant misapplies Eighth Amendment standards to this claim when Plaintiff's status as a pretrial detainee should be analyzed under the Fourteenth Amendment.  ECF No. 216, p. 47-49.  Plaintiff cites to *Kingsley v. Hendrickson*, 576 U.S. 389, 396-98 (2015) to argue that there is no subjective mental state requirements for his due process claim because the only test is whether actions taken were "objectively reasonable."  *Id*. at p. 47-48.  Plaintiff also contends that he has not been permitted to obtain evidence that would show that Defendants should have been aware that the inmate who assaulted him posed an unreasonable risk to his safety.  *Id*. at p. 48-49.  Plaintiff also disputes that the medical treatment he received was adequate because the treatment was not from an actual physician.  *Id*. at p. 49.

Due process claims related to conditions of confinement for pretrial detainees are analyzed under the Fourteenth Amendment instead of the Eighth Amendment, though this results in little functional difference because the protections under each are the same.  *See Holden v. Hirner*, 663 F.3d 336, 340-41 (8th Cir. 2011) (citing *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007)). For a due process claim alleging that prison officials failed to protect a detainee from another inmate, a detainee must show that 1) he was "incarcerated under conditions imposing a substantial risk of serious harm" and 2) the prison official were "deliberately indifferent" to the detainee's health or safety.  *Holden*, 663 F.3d at 342.  The second factor for failure to protect is subjective

and requires proving that a prison official both "knew of and disregarded 'an excessive risk to inmate health or safety.'" *Id*. (quotation omitted).   For a due process claim alleging unconstitutional conditions of confinement regarding a lack of medical care, a detainee must show that he had an objectively serious medical condition and that prison officials knew of the condition but deliberately disregarded the condition. *See Christian v. Wagner*, 623 F.3d 608, 613 (8th Cir. 2010).  The medical condition must be one diagnosed by a physician as necessitating treatment or obvious enough that a lay person would understand the need for the aid of a physician. *See id*.

The Court agrees with Judge Bryant.  Plaintiff has failed to present a genuine question as to either the failure to protect aspect of his due process claim or the denial of medical care aspect of his due process claim.  As to Plaintiff's citation to *Kingsley*, that opinion determined that excessive force claims filed by detainees need only show that the force used was objectively unreasonable.  576 U.S. 396-97.  That is not the kind of claim Plaintiff has made.  Regarding the assault, Plaintiff has failed to provide evidence that any Defendant knew that the other inmate posed a specific danger to Plaintiff or that the inmate had made any threats against Plaintiff.  *See Holden*, 663 F.3d at 341 (noting that officials' lack of knowledge was indicated through lack of knowledge of prior incidents and detainee not previously reporting threats from other inmate).  Also, Plaintiff's contentions regarding the violent history of the other inmate cannot save his claim because a "history of violence alone is insufficient to impute to prison officials subjective knowledge of the inmate's danger to harm other inmates." *Id*.  As the Court determined earlier, Plaintiff's grievances regarding his assault (ECF No. 183-30) indicate that CCDC staff responded to the assault in a good faith manner.

For the medical treatment aspect of this claim, Plaintiff has not alleged, let alone provided proof, that his medical condition after the assault was objectively serious.  Rather, Plaintiff focuses

entirely on the access to and quality of any treatment he did receive.  Without any genuine dispute regarding the objectively serious nature of his medical state, Plaintiff cannot prevail on this claim. *See Christian*, 623 F.3d at 613.

Finally, Plaintiff cannot prevail on his claim regarding his time in the separate cell after the conclusion of his hours on suicide watch.  Plaintiff has not alleged that he was deprived of any right because he was kept in that separate cell.  A due process claim cannot succeed if it fails to allege the deprivation of a right.  *See Olim v. Wakinekona*, 461 U.S. 238, 249-51 (1983) (a detainee failing to allege that he has a protected interest in a particular cell cannot make a due process claim against the decision of officials to place him where they have discretion).  Accordingly, the Court finds that Plaintiff has failed to show that there is a genuine dispute regarding any of the facts that are material to his due process claim.  Therefore, all Defendants are entitled to summary judgment on this claim.

### C. Official Capacity Claims and Qualified Immunity

Judge Bryant recommends that all Defendants be granted qualified immunity against Plaintiff's claims because there have not been any violations of Plaintiff's constitutional rights. ECF No. 211, p. 26-27.  Plaintiff's objection generally argues that he demonstrated that his constitutional rights were violated and that his rights were clearly established.  ECF No. 2016, p. 52-54.

The Court agrees with Judge Bryant.  As determined above, Plaintiff has failed to present a genuine dispute as to the alleged violations of any of his constitutional rights.  Without a constitutional violation, officials acting under color of law are entitled to qualified immunity against claims brought against them in their individual capacity.  *See Dillard*, 961 F.3d at 1052.

24

All claims against Defendants in their official capacities would fail regardless of the outcome of the individual capacity claims.  Examining all of Plaintiff's official capacity claims in his Second Amended Complaint, Defendant lists various state and federal statutes, CCDC and Arkansas corrections policies, and clauses of the Arkansas and United States Constitutions as the customs or policies that violated his rights. ECF No. 140, p. 6-11.  However, Plaintiff only references these policies to assert that Defendants violated the policies during Plaintiff's time at the CCDC. ECF No. 140, p. 6-11.  This is a fundamental flaw in Plaintiff's official capacity claims because the claims need to allege that a statute or policy itself is the source of the violation of Plaintiff's constitutional rights.  *See Gorman*, 152 F.3d at 914.  Examining Plaintiff's Second Amended Complaint, his response to the Defendants' motions for summary judgment, and his objections to the instant report and recommendation, the Court finds that Plaintiff does not allege that there was an official policy or custom that resulted in the alleged deprivations of his constitutional rights.  Accordingly, the Court finds that every official capacity claim brought by Plaintiff fails to provide "proof that a policy or custom" of the CCDC violated his rights.  Accordingly, the official capacity claims should be dismissed even if the Court found that violations of his constitutional rights occurred.

### D. Remaining State Law Claim

Plaintiff brings a claim for false representation of kosher food under Arkansas Code § 20-57-401 against all Defendants in their individual and official capacities, with the exception of Defendant Atkins, who is not named in this claim.  ECF No. 140, p. 12.  Plaintiff asserts that these Defendants knowingly provided Plaintiff with foods that they knew were not kosher and presented the foods as if they were kosher.  *Id*.  Plaintiff asserts that the customs or policies that violated his rights were the "CCDCP 11; AJSP § 6-1002(d); Arkansas Code 20-57-401."  *Id*. at p. 13.

Judge Bryant recommends that the Plaintiff's state law claim be dismissed.  ECF No. 211, p. 26.  Judge Bryant determines that the Arkansas statute under which Plaintiff brought his claims for misrepresenting kosher foods, Arkansas Code Ann. § 20-57-401, is a criminal statute that does not create a private right of action.  *Id*.  Alternatively, Judge Bryant determines that the Court should decline to exercise supplemental jurisdiction over any state law claim because all of the constitutional or federal law claims over which the Court had original jurisdiction will be dismissed.  *Id*.  After rehashing the allegations supporting his claim under the Arkansas statute, Plaintiff's objection argues that the Court should remand the state law claim to state court instead of dismissing the claim.  ECF No. 216, p. 50-52.

The Court agrees with Judge Bryant's recommendation to decline to exercise supplemental jurisdiction over the remaining state law claim.  "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The Court determined above that the RLUIPA claim should be dismissed as moot and that Defendants should be granted summary judgment regarding the constitutional claims.  With no claims remaining over which this Court has original jurisdiction, the Court may decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim.  28 U.S.C. § 1367(c)(3).  As to Plaintiff's request that the Court "remand" the state law claim, there is no court to which this claim can be remanded.  The state law claim was originally brought in this Court through Plaintiff's complaints.  This matter was not removed from a state court pursuant to 28 U.S.C. § 1441.  Accordingly, there is no remand to a state court possible for this claim.

## IV. CONCLUSION

For the reasons stated above, the Court adopts Judge Bryant's Report and Recommendation (ECF No. 211) in part.  The Court adopts Judge Bryant's recommendation for summary judgment

regarding Plaintiff's constitutional claims and recommendation to decline supplemental jurisdiction over Plaintiff's state law claim.   However, the Court does not adopt the recommendation for summary judgment regarding Plaintiff's RLUIPA claim because this claim is moot.   Therefore, Defendants' Motions for Summary Judgement (ECF Nos. 160 and 164) are hereby **GRANTED**.   Plaintiff's constitutional claims against Defendants are hereby **DISMISSED WITH PREJUDICE**.   Plaintiff's RLUIPA claim is **MOOT** and hereby **DISMISSED WITHOUT PREJUDICE**.   The Court declines to exercise supplemental jurisdiction over Plaintiff's claim pursuant to Arkansas Code Ann. § 20-57-401, which is hereby **DISMISSED WITHOUT PREJUDICE**.   Plaintiff's Second Amended Complaint (ECF No. 140) is hereby **DISMISSED**.

       **IT IS SO ORDERED**, this 30th day of September, 2022.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge